UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA,                    15 cr. 0854 (SHS)

    - against -

KYLE MULLINGS

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## SENTENCING MEMORANDUM

                                      MARLON G. KIRTON, ESQ.
                                        Attorney for Defendant
                                           KYLE MULLINGS
                                    175 Fulton Avenue, Suite 305
                                    Hempstead, New York 11550
                                           (516) 833-5617 ph

# *KIRTON LAW FIRM*

---

*Marlon G. Kirton, Esq.*

_____

*Nassau County:*
*175 Fulton Avenue, Suite 305*
*Hempstead, New York 11550*
*Tel. # (516) 833-5617*
*Fax # (516) 833-5620*

May 3, 2019

VIA ELECTRONIC FILING

Honorable Sidney H. Stein
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *United States v. Ali Hamilton, 15 cr. 0854 (SHS)*

Dear Judge Stein:

     I represent Kyle Mullings in the above-referenced matter. Mr. Mullings pleaded guilty. His sentencing is May 24, 2019. I request a reasonable non-guidelines sentence of 60 months. The following factors are relevant factors according to 18 USC 3553 (a).

## **KYLE MULLINGS**

     Kyle Mullings is a quiet young man determined to make life better for himself and his family. Mr. Mullings is very close and very loyal to his family. His mom, brothers, cousins, and girlfriend are his life. His immigrant background is a factor that keeps the family close. Kyle's family members are close geographically as well as emotionally.

     The basics of his life can be found in the probation report. Kyle graduated with a high school diploma. Kyle is taking college-level classes at the Metropolitan Detention Center (MDC). Kyle has a strong work history. Kyle suffered physical trauma on three (3) occasions. He was injured at work. He was shot in the leg. He was assaulted with a hard metal object. These traumas cause continuous pain. He became addicted to prescription meds and used marijuana to deal with his physical trauma. Finally, Kyle has received outstanding reviews from his supervisors at work.

     However, the essence of his future potential cannot be captured in these reports and certificates. Kyle is a spiritual person. He believes in a higher power. Kyle is highly respectful of

2

authority. He always has respected defense counsel throughout the life of this case. He is extremely loyal to those around him that he trusts. He is wise far above his years. He can engage in substantive conversations on a range of topics. Finally, he listens! Many criminal defendants are suffering from so much emotional, family or physical trauma that they lash out at those that attempt to help. Kyle will listen and process what is said to him before he speaks. He is clear-headed about what he wants, but he will always listen, even if he does not agree. He has shown maturity beyond his 24 years of age.

## SENTENCING FACTORS

The United States Supreme Court in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), focused on sentencing factors that impact the defendant. *Apprendi* requires that "any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 490. The Supreme Court extended the logic of *Apprendi* in the landmark *Blakely* case. *Blakely v. Washington*, 124 S. Ct. 2531 (2004). The Court reviewed the constitutionality of a Washington State statute like the United States Sentencing Guidelines (U.S.S.G.). In *Blakely*, the trial court sentenced the defendant to more than three (3) years above the 53-month statutory maximum for his offense. The basis of the enhanced sentence was based on a finding made solely by a judge without the input of the jury. *Blakely* held that the Washington State sentencing guidelines violated the defendant's Sixth Amendment right to a jury trial. The Court reasoned that the statutory maximum is any fact found by a jury or admitted by a defendant. However, *Blakely* did not expressly apply to the U.S.S.G. *Blakely, supra* at footnote 9.

The Supreme Court then applied its Sixth Amendment analysis to the U.S.S.G. *United States v. Booker*, 125 S. Ct. 738 (2005). In *Booker*, (also included in the companion case of *United States v. FanFan*) the Court applied the reasoning and holding of *Blakely* to the U.S.S.G. The Supreme Court held that a statutory maximum for purposes of the Sixth Amendment was any fact proved by a jury or admitted by a defendant. The Court reasoned that for the U.S.S.G. to be constitutional, they had to be advisory rather than mandatory. 18 U.S.C. 3553(b) directs that the court, "shall impose a sentence of the kind and in the range" established by the Guidelines. *Booker, supra.* To the extent that this section of the statute was mandatory, the Court severed section 3553(b) and made the U.S.S.G. advisory rather than mandatory on federal judges. Furthermore, the Court also severed 18 U.S.C. 3742(e) as unconstitutional and held that the standard of review for appellate courts reviewing sentencing issues is "reasonableness." *Booker, supra*. Finally, Courts of Appeal were no longer entitled to review downward departures de novo, the standard for review is reasonableness. *Booker, supra.*

The Second Circuit's first attempt at applying *Booker* came in *Crosby*. *United States v. Crosby*, 397 F.3d 103 (2nd Cir. 2005). In that case, the defendant pleaded guilty and was sentenced to ten (10) years. He appealed, and the court had to decide whether his sentence was unreasonable considering the *Booker* decision. The court remanded the case for the district court to apply the new standards in *Booker,* but it gave guidance to that court as well as all district courts. It held that a district court must consider the U.S.S.G.  when rendering a judgment. While acknowledging that the U.S.S.G. had become advisory, the court cautioned against returning to a

3

pre-guidelines world of marked sentencing disparities. The Circuit gave a checklist for district courts to apply when implementing *Booker*, 1. The U.S.S.G. is no longer mandatory, 2. The district court must consider the U.S.S.G. as well as the other factors in section 3553(a), 3. The application of the U.S.S.G. will usually require determination of the applicable range for a particular case, 4. The district court after considering the U.S.S.G. and all of the appropriate factors in section 3553(a) must decide whether to impose a guidelines sentence or a non-guidelines sentence and 5. The district court is entitled to find all of the facts appropriate for rendering either a guidelines or a non-guidelines sentence

## APPLICABLE GUIDELINES RANGE

Given the guidance of *Crosby*, it is necessary to determine the appropriate guidelines range for Kyle. Kyle was convicted of one (1) count of racketeering conspiracy in violation of 18 U.S.C. 1962 (d). The charge carries a maximum of life in prison, up to 5 years of supervised release, a fine of up to $250,000 and a mandatory $100.00 special assessment. Kyle was also convicted of one (1) count of conspiracy to distribute and possession with intent to distribute crack in violation of 21 U.S.C. 841 (b)(1)(B). The charge carries up to 40 years imprisonment, a mandatory minimum of 5 years imprisonment, a mandatory minimum of 4 years up to lifetime supervised release, a fine of up to $5,000,000 and a $100 special assessment. Kyle is responsible for at least 280 grams but less than 840 grams of crack, therefore his base offense level is 30 pursuant to U.S.S.G. 2D1.1 (c)(5). He receives a 3-level reduction for timely acceptance of responsibility pursuant to U.S.S.G. 3E1.1(a) and U.S.S.G. 3E1.1(b). His adjusted base offense level is 27. He has four (4) Criminal History Points; therefore, he is at Criminal History Category III. Based on an offense level of 27 and a Criminal History Category III his guidelines range is 87-108 months.

## ROLE IN THE OFFENSE

The Government outlined the roles of each of the eight (8) defendants in a letter filed on January 27, 2019. Kyle was described as the least culpable member of the crew. (along with Maurice Simmons). He was a street-level dealer, he had no leadership role, he was not a supplier of narcotics, and he was not involved in acts of violence in furtherance of the conspiracy.

## RECOMMENDATION

A sentence below the applicable guidelines range is a reasonable option in this case. Mr. Mullings' role in the offense and his future job prospects are his greatest assets. The most significant risk factor is his affiliation with members of the Beach Avenue Crew. Kyle intends to move away from the neighborhood, complete his education, start drug treatment, find gainful employment and start a life with his girlfriend. The defense is aware that this Court may have heard these promises from other defendants in other criminal cases. However, Mr. Mullings is in a better position than most to fulfill these promises. He has a high school diploma. He completed college-level classes while incarcerated at the MDC. He has excellent reviews from his employers at the MDC. He has a work history before his incarceration. Finally, he is genuinely remorseful for his actions. These are objective factors that will help him become a productive member of society.

      A 60-month sentence is sufficient but not greater than necessary to comply with the purposes set out in 18 U.S.C. 3553 (a).

Sincerely,


<u>s/Marlon G. Kirton</u>
Marlon G. Kirton, Esq.



cc: Maurene Comey, Assistant United States Attorney (via electronic mail).

5